## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**PAUL J. DEAN,**

     **Plaintiff,**

**vs.**                                                   **CIVIL ACTION NO. 3:20-CV-00566**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 1, 2020 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Motion for Judgment on the Pleadings, and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 17, 19)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or alternatively, remand (ECF No. 17); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 19); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff, Paul J. Dean, (hereinafter referred to as "Claimant"), protectively filed his application for benefits on or about December 14, 2017, alleging disability since May 30, 2015 due to diabetes, hearing loss, a broken back, enlarged prostate, torn tendon in the right arm, high blood pressure, high cholesterol, and injuries to his left foot and ankle and chest as a result of a motor vehicle accident (Tr. at 12, 267-274, 275-281, 298). His claim was initially denied on March 14, 2018 (Tr. at 167-177) and again upon reconsideration on June 25, 2018 (Tr. at 179-191). Thereafter, Claimant filed a written request for hearing on August 10, 2018 (Tr. at 213-214).

An administrative hearing was held on November 7, 2019 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ") (Tr. at 135-166). On December 5, 2019, the ALJ entered an unfavorable decision. (Tr. at 9-25) On December 9, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 264-266) The ALJ's decision became the final decision of the Commissioner on June 29, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On August 27, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11) Subsequently, Claimant filed a Brief in Support of Motion for Judgment on the Pleadings (ECF No. 17), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 19). Consequently, this matter is fully briefed and ready for resolution.

2

**Claimant's Background**

Claimant last worked as an electrician in the petrochemical industry from 1998 through 2014 and last worked on May 30, 2015. (Tr. at 141, 154) He was 61 years old as of the alleged onset date and considered a person closely approaching retirement age throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Id.) Claimant has an associate degree in science. (Tr. at 158, 297)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant meets the requirements for insured worker status through September 30, 2019. (Tr. at 14, Finding No. 1) Next, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 30, 2015, the alleged onset date, through his date last insured ("DLI"), September 30, 2019. (Id., Finding No. 2)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: diabetes mellitus with neuropathy; obesity; right shoulder impingement syndrome; and degenerative disc disease. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded that Claimant's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 through his DLI. (Tr. at 15, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform medium work:

The claimant is capable of lifting/carrying/pushing/pulling 50lbs occasionally and 25lbs frequently; sitting for six hours; and standing or walking for six hours in a workday. He can operate foot controls with the right foot frequently and with the left foot occasionally. For all reaching, he can reach frequently with the right upper extremity. The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, crouch frequently, and crawl occasionally. The claimant can work at unprotected heights frequently, with heavy/hazardous machinery frequently, and in vibration frequently.

 (Tr. at 16, Finding No. 5)

At step four, the ALJ found Claimant was capable of performing his past relevant work as an electrician as it is generally performed. (Tr. at 20, Finding No. 6)

Finally, the ALJ determined Claimant had not been under a disability from May 30, 2015 through September 30, 2019. (Tr. at 21, Finding No. 7)

## Claimant's Challenges to the Commissioner's Decision

In support of his appeal, Claimant asserts that the ALJ failed in his duty to fully develop the medical evidence regarding Claimant's physical impairments; he "completely ignored the claimant's testimony and the medical documentation from his treating physicians as to his medical impairments and the limitations they cause him." (ECF No. 17 at 12-14) Claimant also contends that the ALJ failed to properly consider and evaluate the combined effects of his impairments, which is supported by the uncontradicted medical evidence from multiple treating physicians. (Id. at 14-15) The ALJ failed to consider the medical records of longtime treating physicians and instead substituted his own opinion for those of Claimant's treating physicians. (Id. at 15) Claimant also states that the ALJ erred by relying on the opinions of non-treating and partial record-reviewing state physicians. (Id.) Claimant argues this Court should find him disabled during the relevant period, or alternatively, to remand so that his physical impairments can be fully developed

5

and a more accurate hypothetical question be posed to the vocational expert concerning Claimant's RFC. (Id.)

In response, the Commissioner asserts that Claimant failed to meet his burden of proof that he was disabled, and that the ALJ satisfied her duty to develop the evidence to assess the appropriate RFC based upon all the relevant evidence. (ECF No. 19 at 8-17) The Commissioner also argues that the ALJ did consider Claimant's testimony and self-reports regarding his limitations, but compared them with the objective medical evidence when assessing his RFC. (Id. at 10-12) Additionally, while the ALJ alone makes an RFC finding and is not required to be based upon a specific medical opinion, the ALJ did not ignore Claimant's treating physicians' opinions, but properly evaluated same under the pertinent Regulations. (Id. at 12-17) The Commissioner further argues that Claimant fails to not only identify any specific Listing the combination of his impairments supposedly met, but also fails to identify any specific evidence in support of his generalized argument for same. (Id. at 17) The Commissioner points out that at step three, the ALJ did consider Claimant's impairments under the pertinent Listings, as well as the combined effects of his impairments, and proceeded to consider them in the subsequent steps in his analysis. (Id. at 18-19) Finally, the Commissioner states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 20)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

<u>Primary Care Provider Records:</u>

Claimant saw his primary care physician, Robert Turner, M.D., throughout the relevant period for management of chronic medical conditions, such as benign prostatic hyperplasia, hypertension, hyperlipidemia, vitamin D deficiency, and diabetes mellitus (See, e.g., Tr. at 526, 532, 535). He was prescribed metformin HCI 1000 mg twice a day for his diabetes (Tr. at 534). Although Claimant's hypertension was generally controlled, he repeatedly registered blood glucose and hemoglobin A1C readings that were clinically indicative of uncontrolled diabetes mellitus (Tr. at 514, 519, 523, 528, 597, 602). Despite these readings, there was no evidence of comorbid conditions such as diabetic retinopathy or repeated episodes of dizziness or syncope; in addition, these records documented that Claimant had body mass index ("BMI") scores greater than 30 kg/m2 during the relevant period (See, e.g., Tr. at 513, 527, 536, 596). Claimant's physical examinations were always normal showing he was in no acute distress with no neurological deficits and normal motor dysfunction function, balance, gait, and station (Tr. at 513, 518, 522, 527, 532, 596, 602).

<u>Emergency Room Records:</u>

On October 12, 2015, Kanawha County Emergency Medical Services team of Brigit Holloway, Paramedic, and Donald Ennis, EMT, attended to Claimant at the sight of a collision and delivered him to Cabell Huntington Hospital Emergency Department; Claimant had an abrasion on his head and was suffering a headache from the impact (Tr. at 426). When Claimant presented to the emergency room, he was complaining of chest and forehead pain (Tr. at 433). A physical examination was unremarkable showing a full range of motion throughout, normal muscle strength, no signs of musculoskeletal tenderness or swelling, normal extremity fine motor function,

no focal deficits, and normal sensation (Tr. at 458). Given Claimant's complaints, medical providers ordered x-rays and CAT scans of his head, chest, pelvis, and abdomen; diagnostic imaging of the cervical, thoracic, and lumbar spine showed generally mild signs of degenerative disc disease with no acute findings (Tr. at 463, 464, 465) and diagnostic imaging of the chest, abdomen and pelvis were also negative (Tr. at 465, 466). Physicians determined that Claimant did not have a serious injury and discharged him in stable condition with instructions to follow up with his primary care physician (Tr. at 442, 445). In November 2015 and May 2016, Claimant saw his primary care physician following the motor vehicle accident but did not complain of any musculoskeletal issues; he reported that he had been retired about a year, "feels fine", and had gone "camping twice already." (Tr. at 521, 526).

Chiropractic Treatment:

On September 16, 2016, Claimant reported to Alan Wild, DC for treatment of pain in his left foot and ankle connected to the October 2015 motor vehicle collision. (Tr. at 470) Dr. Wild noted that Claimant's Lateral and Medial Stability tests were positive with mild pain, and Tinel's foot sign, Simmond's Test, and Achilles Tap Test were negative. (Id.) Following several weeks of therapy, on October 28, 2016, Dr. Wild released Claimant from care, noting Claimant had normal range of motion in his ankle; no pain with walking, standing, or bending; and no positive orthopedic or neurological findings (Tr. at 473). Dr. Wild concluded by finding that Claimant was back to his pre-accident status and had no residual symptoms (Id.).

On October 25, 2019, Dr. Wild completed a "Residual Physical Functional Capacity Evaluation" indicating that Claimant: could stand, walk, or sit no more than two hours in an eight-hour workday; alternate sitting and standing every thirty minutes; frequently and/or occasionally

8

lift/carry less than ten pounds; limited in both upper and lower extremities with respect to pushing and/or pulling; should never climb ramps, stairs, ladders, ropes or scaffolds and never crawl; could occasionally balance, stoop, and crouch; and should avoid all exposure to temperature extremes and hazards (Tr. at 607). Dr. Wild opined that after reviewing Claimant's "medicals for Social Security Disability . . . [Claimant] has been disabled since May 2015." (Id.)

<u>State Agency Medical Consultant Opinions:</u>

In March 2018, Narenda Parikshak, M.D., reviewed Claimant's medical records and concluded that his impairments did not satisfy the criteria in Listing 1.02 (Tr. at 172). Dr. Parikshak further opined that Claimant retained the functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand for up to six hours a day and sit for up to six hours; occasionally crawl and climb; frequently balance, stoop, kneel, and crouch; frequently reach in all directions with his right arm; and should avoid concentrated exposure to extreme cold, wetness, noise, and hazards (Tr. at 174-175).

In June 2018, Rabah Boukhemis, M.D., reviewed the updated record of evidence and affirmed Dr. Parikshak's assessment of Claimant's residual functional capacity (Tr. at 187-189).

<u>Consultative Physical Examination:</u>

In May 2018, Claimant saw Stephen Nutter, M.D., for a consultative physical examination at the behest of the state agency (Tr. at 559-564). Claimant reported a seven or eight-year history of right arm problems due to a torn bicep, but he did not have surgery on it (Tr. at 559). He also reported left ankle and foot pain, diabetes mellitus, hypertension, and asthma (Id.). On examination, he had a normal gait and appeared stable in the supine and sitting positions (Tr. at 560). He had slight crepitus in both shoulders and some right biceps pain but no shoulder or left

arm tenderness; normal (5/5) grip strength; and normal shoulder, elbow, wrist, and finger range of motion (Tr. at 561, 563). Examination of his lower extremities and cervical spine was normal except for mildly reduced knee flexion (Id.). Dr. Nutter noted reduced range of motion in his dorsolumbar spine, but no muscle spasm or tenderness and negative straight leg-raising test (Tr. at 561). An x-ray of Claimant's left ankle revealed a calcaneal heel spur, but was otherwise normal (Tr. at 564). Dr. Nutter assessed Claimant with a torn right biceps and chronic dorsolumbar strain (Tr. at 562).

Scott Orthopedic Center – Jack Steel, M.D.:

On September 11, 2018, Claimant saw Dr. Jack Steel, an orthopedist, for evaluation of right shoulder pain (Tr. at 572-573). Right shoulder x-rays showed no degenerative changes (Tr. at 573), and Dr. Steel assessed Claimant with right shoulder impingement syndrome and right proximal biceps tendon rupture (Tr. at 572). Dr. Steel referred Claimant to physical therapy and advised him to use aspirin as an anti-inflammatory (Tr. at 573). Claimant subsequently participated in a physical therapy program between September 17 and October 19, 2018 (Tr. at 609-630). When Claimant returned to Dr. Steel on October 23, 2018, he endorsed improvement in his symptoms (Tr. at 570). A physical examination documented mild infraspinatus atrophy in the right shoulder and tenderness along the bicep groove, but Claimant had full (5/5) muscle strength throughout both shoulders, intact extremity sensation, normal coordination, and normal walking gait (Id.). Dr. Steel determined that Claimant had improved significantly and had no symptoms (Tr. at 571).

Body-Mind-Spirit Podiatric Center Records:

In August 2019, Claimant saw Brian Bailey, DPM, a podiatrist, for a chronic bilateral foot pain as well as chronic ingrown toenail of his left great toe (Tr. at 632-634). On examination, Dr.

Bailey observed Claimant to be in good health who could heel to toe walk with ease and had full (5/5) strength and full range of motion in the lower leg, ankle, and foot, though he did have pain at the ingrown toenail (Tr. at 633). Dr. Bailey noted Claimant is a type 2 diabetic and started paperwork for a custom diabetic insole shoe insert which would also help with the ankle pain (Tr. at 634). Repeat physical examinations were unchanged (Tr. at 636, 639).

On October 30, 2019, Dr. Bailey completed a "Residual Physical Functional Capacity" form noting Claimant's diagnoses included diabetes, type II, right torn bicep, chronic dorsolumbar sprain, "broke back", hearing loss, enlarged prostate, high blood pressure, high chol[esterol], injured left foot/ankle/chest, and asthma (Tr. at 644). Dr. Bailey opined that Claimant could lift and carry no more than ten pounds, stand and walk less than two hours in an eight-hour workday, and sit less than two hours in an eight-hour workday (Tr. at 644). Dr. Bailey stated that Claimant would need to alternate positions all day, and he had limited ability to push and or pull with both his upper and lower extremities (Id.). Dr. Bailey did not indicate any postural, manipulative, communicative, or environmental limitations (Id.).

**The Administrative Hearing**

Claimant Testimony:

Claimant described his past work as an electrician, for which he wore a toolbelt that weighed at least 25 pounds, and involved lifting, carrying, and pulling from 50 to 100 pounds every day. (Tr. at 141-143) Claimant stated that he had upper and lower back pain everyday as well as foot pain and shoulder pain; when walking, his foot bothers him more than his back. (Tr. at 143-144) He testified that he takes medicine for his pain, which does help. (Tr. at 145) Claimant testified that he is right hand dominant, and that he is unable to lift anything with his right arm due

11

to pain, and it will turn black and blue where the muscle had torn. (Tr. at 145-147) He stated he can lift anything with his left hand, though. (Tr. at 147)

Claimant stated that if he walks too much, his feet hurt and throb at nighttime. (Tr. at 148) He estimated that he could walk about four blocks, but he walked a block the other day and his foot was hurting (Tr. at 149). He testified that he cannot sit long, but can sit through an hour for church services, but his back hurts (Tr. at 148). Claimant testified that he gets dizzy a lot, and was unsure if it was his blood pressure or when he gets hot; he has ringing in his ears, and although hearing aids were not recommended, he was told that he has severe hearing loss (Tr. at 149).

Vocational Expert ("VE") Testimony:

After listening to Claimant's testimony, the VE determined that Claimant's past work as an electrician is classified as medium and skilled as generally performed, but heavy as Claimant performed it. (Tr. at 159) After having considered a hypothetical question posed by the ALJ with regard to an individual with Claimant's functional profile (Tr. at 160-162), the VE testified that an individual of Claimant's age, education, and vocational background who had Claimant's limitations as described in the RFC, *supra*, would be able to perform Claimant's past relevant work as an electrician, but not as performed by Claimant (Tr. at 162). The VE further testified that there were no transferable skills to light or sedentary work (Id.).

In response to questioning by Claimant's attorney, the VE testified that a hypothetical including the limitation endorsed by Drs. Bailey and Wild, Claimant's treating providers, all jobs would be eliminated (Tr. at 163). The VE further explained that in medium-type jobs, the lifting maximum is 50 pounds occasionally with either arm; light-type jobs involve lifting up to 20 pounds occasionally (Tr. at 163-164).

12

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, Claimant argues that the ALJ failed in his duty to develop the record with respect to several alleged impairments[2], and that he "completely ignored" Claimant's testimony and the medical documentation concerning the limitations his impairments caused. (ECF No 17 at

---

[2] Later in his brief, Claimant specified that the following impairments preclude his ability to engage in substantial gainful activity: hearing loss; diabetes type II; a broken back; enlarged prostate; left ankle; foot; torn right biceps tendon; hypertension; asthma; heel spur; hammer toe; high blood pressure; high cholesterol; and bursitis of right shoulder. (ECF No. 17 at 14)

11-14) As an initial matter, with respect to Claimant's contention that the ALJ "completely ignored" his testimony and the medical documentation from his treating physicians as to his limitations, the undersigned **FINDS** this argument lacks merit:

In his written decision, the ALJ specifically recalls not only Claimant's statements in his application for disability benefits (Tr. at 16-17), but also Claimant's testimony concerning his alleged chronic musculoskeletal pain that impaired his ability to function and that it affected his sleep through the night (Tr. at 17). He also recognized that Claimant had alleged uncontrolled diabetes mellitus and that he was unable to lift anything because of his arm and back spasms and that he testified he could stand no more than 15 minutes and sit for no more than one hour at a time. (Id.) Further, in addition to discussing the relevant medical evidence of record (Tr. at 15-16, 17-19, discussed further, *infra*), the ALJ explicitly considered the opinion evidence of not just the state agency medical consultants and examiners, but also Claimant's treating providers, namely, Drs. Wild and Bailey (Tr. at 19-20).

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim in order to determine if it met the requirements in the listings of impairments amounted to a neglect of his duty to develop the evidence. Id

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled." Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment, further, the Regulations are clear that this responsibility is ongoing at each level of the administrative review process. Id. The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, Claimant was represented by counsel and the ALJ has the right to assume that Claimant's counsel was presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W.Va. Jan. 4, 2011) (Eifert, M.J.) (citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009). An ALJ's duty to develop the record does not require him to make specific inquiries into Claimant's treatment modalities or search for cumulative evidence; his duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v.

Harris, 658 F.2d 260, 264-65 (4ᵗʰ Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4ᵗʰ Cir. 1976).

With respect to Claimant's assertion that the ALJ failed to develop the evidence of his numerous physical impairments (See footnote 2, *supra*), it is noted that Claimant neither specifies what evidence was not adequately fleshed out by the ALJ, nor what evidence specifically supports his argument that he is disabled. For starters, it is important to recognize that this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4ᵗʰ Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11ᵗʰ Cir. 2005) (*per curiam*)); see also Call v. Berryhill, Civil Action No.2:17- CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). While the ALJ may not have specifically mentioned each of Claimant's alleged impairments[3], he stated that he considered all the evidence of record. (See Tr. at 12 ("After careful consideration of all the evidence. . ."); Tr. at 16 ("After careful consideration of the entire record. . ."; and Tr. at 17 ("After careful consideration of the evidence .. ."). Having so stated, this court should "take [him] at [his] word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated

---

[3] The ALJ did not expressly mention the "broke back", asthma, hammer toe, or high cholesterol as mentioned *supra*, and Claimant does not explain how each of these impairments, let alone in combination, disabled him. It is significant to recognize however, that despite Claimant's assertion that he suffered from a "broke back", and despite the reference to a "fracture" in the history section listed in the radiology reports concerning imaging of Claimant's skull and cervical, thoracic, and lumbar spine (Tr. at 463-465), there is simply no evidence whatsoever of any fracture of any area of Claimant's vertebrae in the record. Thus, the ALJ's failure to mention any fracture or "broke back" appears justified. In any event, the ALJ does discuss how Claimant's impairments and symptoms related thereto affected his overall functioning in his review of the medical and other evidence of record in the RFC assessment (Tr. at 16-20).

that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."). Moreover, despite Claimant's listing the various diagnoses and symptoms related thereto in his brief, this is not the litmus test for disability, as it is also well known that diagnoses alone do not establish disability, because there must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (*per curiam*) (internal citations omitted).

Nevertheless, despite Claimant's assertion otherwise, the ALJ expressly considered the medical evidence from the treating sources of record, including medical evidence that predated his alleged onset date, since April 2015 (Tr. at 17, 19, 20, 532). In addition to the opinion evidence (Tr. at 18, 19-20), which included the opinions provided by state agency consultative examiners, state agency medical consultants, as well as Claimant's own treating providers, the ALJ also expressly considered Claimant's and the vocational expert's testimonies (Tr. at 16-17, 20-21) Indeed, when asked by the ALJ at the beginning of the hearing if there was a complete record in this case, Claimant's attorney responded in the affirmative. (Tr. at 139) In short, Claimant has failed to demonstrate any paucity in the evidence that would have warranted further development

17

of the record.

Accordingly, the undersigned **FINDS** that Claimant's contention that the ALJ erred by failing to develop the record is without merit.

<u>Consideration of the Combined Effect of Impairments:</u>

In a conclusory fashion, Claimant asserts that the medical evidence confirms that the combined effect of his severe physical and mental impairments rendered him totally disabled and meet or exceed Listing requirements. (ECF No. 17 at 14) Claimant does not specify which impairment specifically meets or equals any Listing, he again emphasizes that the ALJ failed to consider the medical evidence from his treating physicians. (<u>Id</u>.)

The Regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. § 404.1523(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. <u>Id</u>. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on Claimant's ability to work. <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. § 404.1525(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531.  A claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

It is important to note that at the second step in the sequential evaluation process, the ALJ found numerous impairments that were not severe enough to have significantly limited Claimant's ability to perform basic work activities: benign hypertension; benign prostatic hyperplasia; keratosis; left heel spur; hearing loss; and an ingrown toenail. (Tr. at 14-15, 489-538, 539-556, 577-605, 631-642) The ALJ specifically noted that the longitudinal objective evidence supported the conclusion that none of these conditions, either singly or in combination, resulted in more than a minimal impact on Claimant's ability to engage in work activities (Tr. at 15, 458, 518, 522, 527, 532, 560-563, 572, 590, 633).

Next, at the third step of the sequential evaluation process, the ALJ first evaluated Claimant's impairments under Section 1.00 which pertains to the musculoskeletal system. (Tr. at 15) With regard to Claimant's right shoulder impingement syndrome under Listing 1.02, which concerns major dysfunction of a joint, he noted that the records did not show that this condition did not result in an inability to ambulate effectively or an inability to perform fine and gross movements effectively. The ALJ further noted that Claimant's severe impairment also did not meet criteria under Listing 1.04, which concerns disorders of the spine, as there was no evidence of

19

nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting pseudoclaudication.

With regard to Claimant's obesity pursuant to Social Security Ruling (SSR) 19-2p, the ALJ acknowledged that while obesity is not a listed impairment, he recognized that any impairment to Claimant's functioning as a result of this condition must be considered when assessing his claim at other steps in the sequential evaluation process, including the RFC. (Id.)

With regard to Claimant's diabetes mellitus, the ALJ acknowledged this impairment may cause symptoms or complications with regard to treatment similar to other impairments under the Listings, and that SSR 14-2p and Listing 9.00B5 require him to consider Listing requirements under Sections 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00. (Id.) The ALJ determined that Claimant has not exhibited any symptoms or suffered from complications resulting from his diabetes mellitus that medically equaled any of these Listings' requirements, specifically with respect to Listing 11.14, because the evidence did not demonstrate disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities or demonstrate marked limitation in physical functioning. (Tr. at 15-16)

To the extent that Claimant takes issue with the ALJ's evaluation of his subjective complaints, it is noted that recently the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely

exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. Essentially, the Fourth Circuit has once again cautioned against an ALJ's analysis must not primarily rely upon the lack of objective medical evidence as the reason for discounting a claimant's complaints. As demonstrated by the foregoing, this did not occur here, the ALJ herein did not select only those portions from the objective medical evidence that failed to support Claimant's allegations of disabling impairments, the ALJ also examined both aggravating and mitigating factors with respect to Claimant's subjective complaints which included his testimony, his reports to providers, the objective medical evidence, as well as the opinion evidence. The law does not require one to be pain-free of experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of Claimant's subjective complaints that complied with the pertinent Regulations and case law.

Clearly, the ALJ considered the medical evidence as well as Claimant's reported symptomology from the relevant time period. As discussed *supra*, the ALJ did consider this evidence in making his third step determination, thus, to the extent that Claimant argues that the ALJ failed to consider and evaluate the combined effects of his impairments, the undersigned

**FINDS** this argument lacks merit. Additionally, to the extent that Claimant contends the ALJ failed to consider the medical records provided by his treating physicians, the undersigned **FINDS** this contention also lacks merit. Finally, to the extent that Claimant asserts the ALJ failed to consider his subjective complaints, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, and that the ALJ's conclusion that Claimant's statements were inconsistent with the evidence of record complied with the applicable law and is supported by substantial evidence.

Evaluation of Opinion Evidence:

Claimant argues that the ALJ "substituted" his own opinion with those provided by Claimant's treating providers, Drs. Wild and Bailey, ostensibly because the ALJ did not adopt their opinion that Claimant was disabled or at least incapable of performing work greater than sedentary level (ECF No. 17 at 14-15). Here, the ALJ explicitly applied the regulatory framework pursuant to Section 404.1520c to claims filed after March 27, 2017: "[a]s for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any administrative medical finding(s) or medical opinion(s), *including those from your medical sources*." (Tr. at 19) (emphasis added) Here, the ALJ properly applied Section 404.1520c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record. Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion

(or a prior administrative medical finding). Id. 404.1520c(b)(2). Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. When discussing her finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 416.1520c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id.  § 404.1520c(b)(2)-(3).

In this case, the ALJ appropriately recognized that pursuant to 20 C.F.R. § 404.1527(d), he found the opinions provided by Drs. Wild and Bailey "unpersuasive", specifically noting their opinions that Claimant "was limited to a sedentary range of activity, with standing or walking no more than two hours in a workday, and lifting no more than 10 pounds in weight", in addition to Dr. Wild's opinion that Claimant "should never climb or crawl, no more than occasionally perform all remaining postural activities, and avoid all exposure to temperature extremes." (Tr. at 19, 607, 644) The ALJ correctly observed that "neither doctor cited to any objective evidence or findings to support their opinions" and further, "their opinions are not consistent with the objective evidence." (Id.) The ALJ explained:

> Despite the claimant's impairments, objective examinations documented grossly normal muscle strength and motion throughout the claimant's musculoskeletal system, as well as normal find motor coordination and balance, intact extremity sensation, and a normal and independent walking gait.

(Tr. at 19-20, 458, 518, 522, 527, 532, 560-563, 572, 590, 633). Accordingly, the ALJ concluded that these findings were inconsistent with the opinions that Claimant could stand and walk for only two hours in a workday or limited to lifting or carrying no more than 10 pounds, thus, the ALJ did

23

not adopt the restrictions endorsed by Drs. Wild and Bailey in the RFC assessment. (Tr. at 20) The Regulations and pertinent case law support the ALJ's observation, because an RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 404.1546(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.").

Although Claimant advocates for an alternate decision, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that he is not disabled, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7. The ALJ's narrative of the record included the objective medical evidence, including imaging, and examination findings, as well as the other evidence of record, including but not limited to Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and his ultimate determination that Claimant remained capable of medium work during the relevant period despite his subjective complaints, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Mascio, 780 F.3d at 637. Accordingly, the undersigned **FINDS** the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

Finally, the undersigned **FINDS** that the Commissioner's final decision determining that Claimant was not disabled from May 30, 2015 through September 30, 2019 is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 17), **GRANT** the Defendant's request to affirm the decision below (ECF No. 19), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 19, 2021.

Omar J. Aboulhosn
United States Magistrate Judge